**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHAEL D. GIBBONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 10-cv-8640 (BSJ) |
| ) | |
| JOHN C. MALONE, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| DISCOVERY COMMUNICATIONS, INC., ) | |
| Nominal Defendant. ) | |

**DISCOVERY COMMUNICATIONS, INC.'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO DISCOVERY'S JOINDER**
**IN MOTION TO DISMISS BY DEFENDANT MALONE**

Defendant Discovery Communications, Inc. ("Discovery") submits this reply to Plaintiff's opposition to Discovery's joinder in Defendant Malone's motion to dismiss to address the deficiencies in Plaintiff's novel and unfounded theory of liability under Section 16(b).

The transactions at issue in this case involve two entirely different equity securities issued by Discovery. These securities have different legal rights with respect to Discovery: Series A Common Stock has voting rights of one vote per share, whereas Series C Common Stock has no voting rights. Moreover, Series A Common Stock and Series C Common Stock possess no legal rights that tie the price of one to the other; they are neither convertible into nor derivative of each other. Not surprisingly, given the lack of a de jure relationship that connects

- 1 -

their prices, the market treats these two securities differently, causing their price to fluctuate separately (and indeed at times to move in opposite directions). Without a fixed economic relationship between the transacted securities, Section 16(b) does not apply, and Plaintiff's complaint fails to state a claim as a matter of law.

## ARGUMENT

I.   **PLAINTIFF'S NOVEL THEORY OF MARKET EQUIVALENCE FAILS TO STATE A CLAIM BECAUSE SECTION 16(b) APPLIES ONLY TO TRANSACTIONS INVOLVING SECURITIES WITH LEGAL RIGHTS THAT CAUSE THEIR PRICES TO CORRELATE IN A FIXED, FORMULAIC MANNER.**

As an initial matter, Plaintiff's claim, which involves transactions in *different* equity securities, falls outside the plain language of the statute. Specifically, Section 16(b) provides: "[A]ny profit realized by [a statutory insider] from any purchase and sale, or any sale and purchase, of *any equity security* of such issuer . . . within any period of less than six months . . . shall inure to and be recoverable by the issuer . . . ." 15 U.S.C. § 78p(b) (emphasis added). However, as explained in more detail in Defendant Malone's reply brief, neither the statutory language nor the SEC regulations and the cases interpreting it support Plaintiff's expansive reading of Section 16(b), which tries to stretch the meaning of "any equity secur*ity*" (singular) to reach transactions involving two legally unrelated equity secur*ities*.

To the contrary, as a strict liability statute, Section 16(b) depends upon bright line rules to provide investors clear notice of what conduct falls within the statute. *See Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972) ("In order to achieve its goals [under Section 16], Congress chose a relatively arbitrary rule *capable of easy administration*." (emphasis added)). To avoid ensnaring legitimate transactions within the statute's "harsh result" of imposing "liability without fault," the Supreme Court, Second Circuit, and this Court have adopted a narrow interpretive approach when applying Section 16(b). *Foremost-McKesson, Inc. v.*

*Provident Sec. Co.*, 423 U.S. 232, 252 (1976) (restricting the transactions covered by Section 16(b) because "Congress itself limited carefully the liability imposed by § 16(b)"); *see also Gollust v. Mendell*, 501 U.S. 115, 122 (1991) (recognizing the "narrowly drawn limits" Congress has imposed on which transactions are subject to Section 16(b)); *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 16 (2d Cir. 2001) (noting that the Supreme Court has instructed that Section 16(b) operates "only within 'narrowly drawn limits'"); *Levner v. Saud*, 903 F. Supp. 452, 461 (S.D.N.Y. 1994) ("[T]he Supreme Court has stressed a narrow approach to the statutory construction of § 16(b).").

Consistent with this narrow interpretative approach, Section 16 creates liability for transactions involving non-identical securities in only very limited circumstances, none of which are present here.  Specifically, Section 16(b) applies only to transactions involving different securities where the holder has a legal right to obtain the other at price that is a fixed function of the value of the underlying security (*i.e.*, securities that are convertible into, or derivative of, the other at a fixed price).  *See, e.g.*, *Gund v. First Fla. Banks, Inc.*, 726 F.2d 682, 687 (11th Cir. 1984) (matching sales of convertible debentures and purchases of the underlying common stock); 17 C.F.R. § 240.16b-6(a) (applying Section 16(b) to transactions involving derivative instruments but specifically excluding transactions involving derivatives without a fixed exercise price).  Absent such a relationship, matching unrelated securities is "beyond the realm of judicial fantasy."  *Smolowe v. Delendo Corp.*, 136 F.2d 231, 237 n.13 (2d Cir. 1943).

The SEC's interpretation of Section 16(b) confirms that the existence of a fixed, formulaic relationship between the prices of the transacted securities is the touchstone for Section 16(b) liability.  *See* Ownership Reports and Trading By Officers, Directors and Principal Security Holders, 56 Fed. Reg. 7242, 7252 (Feb. 21, 1991) ("Rights without a fixed exercise

price do not provide an insider the same kind of opportunity for short-swing profit since the purchase price is not known in advance. The opportunity to lock in a profit begins *when the exercise price is fixed*; *at that time*, the right becomes a derivative security *subject to section 16*." (emphasis added)). Indeed, for this reason, SEC Rule 16b-6(a) *excludes* from Section 16(b) liability transactions involving derivatives without a fixed exercise price. *See* 17 C.F.R. § 240.16b-6(a). Reasoning from SEC Rule 16b-6(a), at least one commentator has noted that it is "straightforward" that non-identical securities without a right conversion to the other are not matchable under Section 16(b). A.S. Jacobs, 1 Section 16 of the Securities Exchange Act, § 3:20 (2011).

Here, the link between the transacted securities is even more remote than in the transactions exempted from Section 16(b) involving derivatives without a fixed exercise price. In the case of a derivative without a fixed exercise price, the holder, unlike here, still has the legal right to purchase (or sell) the underlying security. By contrast, there is no right of conversion between the transacted securities at issue in this case or any other legal rights that connect the two securities. In fact, the transacted securities do not even possess the same legal rights with respect to Discovery, the issuer: Series A Common Stock receives one vote per share, but Series C Common Stock has no voting rights. Without any legal rights connecting these two different securities, much less legal rights establishing a fixed economic relationship between them, Section 16(b) simply does not apply. Indeed, Plaintiff does not and cannot cite any authority to the contrary.

Because there is no legal relationship between the transacted securities at issue in this case (and no supportive case law), Plaintiff grasps at what he asserts is a "highly correlated" market performance of the securities to invent the link necessary to match the transactions under

Section 16(b). Opp. at 10-11. However, as demonstrated by the Defendants' opening briefs, there is no such dispositive correlation. Moreover, even if there were, retrospective market performance cannot possibly provide the legal standard for Section 16(b) liability. Under Plaintiff's proposed theory, driven as it is by past market performance, it would be impossible for statutory insiders to know ex ante whether their transactions are subject to Section 16(b), which contravenes Section 16(b)'s well established goal of providing clear guidance to investors. *See, e.g.*, *Gollust*, 501 U.S. at 122 (limiting Section 16(b) liability to a "'mechanical' application of the statutory text," which sets clear limits to the statute). Indeed, as a practical matter, Plaintiff's sweeping market-based performance rule has no workable limits. Given fluctuations in the market, securities could be "highly correlated" under Plaintiff's proposal to a degree that triggers Section 16(b) liability during certain times but not during others, thereby undermining consistent enforcement of the statute and creating further difficulties in providing notice to investors and the courts of what will and will not violate Section 16(b). Contrary to Section 16(b)'s purpose of providing a rule "capable of easy administration," *Reliance Elec.*, 404 U.S. at 422, Plaintiff has not and cannot offer any guidance on precisely how "highly correlated" securities must be to trigger Section 16(b). To avoid the uncertainty inherent to Plaintiff's market-driven rule and to provide the clarity required by Section 16(b)'s strict liability regime, existing authority requires that securities may be matched only if a legal relationship exists that correlates their prices according to a fixed formula.

Finally, the impossibility of calculating "profits" from transactions where, as here, there is no legal relationship between the transacted securities to correlate their prices demonstrates that they do not fall within Section 16(b). Indeed, Plaintiff himself recognizes the difficulty in his novel theory, which would require the calculation of profits by matching purchases and sales

of securities without legally-linked economic characteristics.  *See* Opp. at 6 ("It is unclear, for example, how one would compute profits in a series of transactions involving common stock and preferred stock, where the classes would typically be materially different in their economics, having different claims on the profits and assets of the enterprise.").  Rather than address this flaw, Plaintiff (in a footnote) points to the SEC's rules for calculating profits from derivatives transactions and simply suggests a "similar" approach here.  Opp. at 6 n.14.  But what makes calculating the profits from transactions involving derivatives possible, which is absent here, is the legal right to purchase (or sell) the underlying security *at a fixed exercise price*.  In fact, the very SEC regulations that Plaintiff cites do not even attempt to calculate the profits from transactions involving securities without a fixed exercise price, but instead *specifically exempt* those transactions from Section 16(b) liability.  *See* 17 C.F.R. 240.16b-6(a).  The same result is required here.  Because there is no fixed, formulaic relationship between Discovery's Series A voting Common Stock and its Series C non-voting Common Stock, the securities at issue in this case, any attempt to calculate Section 16(b) "profits" between the two would be mere speculation and thus "beyond the realm of judicial fantasy."  *Smolowe*, 136 F.2d at 237 n.13.

## CONCLUSION

For the foregoing reasons, Discovery respectfully requests that the Court dismiss Plaintiff's complaint for failure to state a claim.

Respectfully submitted,

DISCOVERY COMMUNICATIONS, INC.

By its attorney,

/s/ John F. Batter III
John F. Batter III (B1998))
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel:  (617) 526-6000
Fax:  (617) 526-5000
John.batter@wilmerhale.com

Dated:  March 18, 2011

## CERTIFICATE OF SERVICE

I, John F. Batter III, do hereby certify that a copy of the above document was served on all counsel registered with the ECF system by electronic service on the 18th day of March 2011.

/s/ John F. Batter III
John F. Batter III