UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
MICHAEL D. GIBBONS,                 :
                                    :   10 CV 8640(BSJ)
              Plaintiff,            :
                                    :   **Memorandum & Order**
         v.                         :
                                    :
JOHN C. MALONE and DISCOVERY        :
COMMUNICATIONS, INC.,               :
                                    :
              Defendants.           :
------------------------------------X

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Michael Gibbons ("Gibbons") brings suit under Section 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(b), against John Malone ("Malone") and Discovery Communications, Inc. ("Discovery"). Plaintiff, a shareholder of Discovery, alleges that Malone, then a director of Discovery, engaged in insider trading through transactions in Discovery's common stock between December 5 and December 16, 2008. (Compl. ¶ 13.) Plaintiff seeks a disgorgement of Malone's profit to Discovery plus interest, costs and an accounting of all transactions in Discovery from 2008-10.

## BACKGROUND[1]

Discovery is a Delaware corporation. At all times relevant to this action, three classes of Discovery's common stock were traded on the NASDAQ: Series A Common Stock ("Series A") traded under the ticker symbol DISCA, Series B Common Stock ("Series B")

---

1 The following facts are taken as true for the purposes of the motion to

traded under the ticker symbol DISCB, and Series C Common Stock ("Series C") traded under the ticker symbol DISCK. (Compl. ¶¶ 14-17.) Each series of stock was registered pursuant to Section 12 of the Exchange Act and each was a class of Discovery's equity securities. (Compl. ¶¶ 18-23.) As the alleged transactions involved the Series A and Series C stock, those securities will be the focus here.

Discovery's Articles of Incorporation, attached as exhibit A to the complaint, sets forth the different characteristics of each series of stock. First, the stocks differ in their voting rights: Series A stock holders have one vote for each share while Series C stock carries no voting rights. (Compl. Ex. A. at A-13.) The Articles further set forth that "[s]hares of Series A Common Stock and shares of Series C Common Stock shall not be convertible into shares of any other series of Common Stock." (Id. at A-14.) Dividends, other than a dividend that constitutes a share distribution, must be equally paid to all series of stock. If a share distribution is to be made, Series A and Series C stock have different rights, as a Series A holder may receive a distribution of Series C stock, but a Series C holder may not receive a distribution of Series A stock. (Id. at A-15.) Upon liquidation, holders of Series A and Series C stock are treated equally. (Id. at A-17.) As of the time of the transaction, an options market existed for Series A stock but not Series C

stock.[2]

In December 2008, Defendant Malone was a director of Discovery and owned more than 10 percent of a class of Discovery's common stock. (Compl. ¶¶ 10-11.) Between December 5 and December 17, 2008, Malone, personally and through one or more trusts he controlled, executed ten purchases of shares of Discovery's Series A stock and nine sales of shares of Discovery's Series C stock. Plaintiff sets forth the details of these purchases and sales in Schedule II attached to the complaint, including the dates, numbers of shares bought or sold, and price. (Compl. Schedule II.)

Plaintiff alleges that Malone realized a short-swing profit from the transactions at issue. Plaintiff alleges that "for each share of Series A Stock purchased by Malone, a corresponding sale of Series C Stock was made at a higher price by Malone." (Compl. ¶ 53.) Using the "lowest-in, highest-out" method of computing profits endorsed by the Securities and Exchange Commission ("SEC"), "Malone has realized illicit profits in the amount of at least $313,573." (Compl. ¶ 54.)

Plaintiff's counsel, then representing a shareholder other than Gibbons, made a demand on Discovery for prosecution of these claims on December 17, 2008 and by follow-up letter dated December 31, 2008. By letters dated December 19, 2008 and

---

2 The Court takes judicial notice of the existence of an options market for only Series A stock during this time period. See In re Initial Public Offering

February 11, 2009, Discovery declined to take action against Malone. (Compl. ¶¶ 8-9.) On August 20, 2010, Plaintiff's counsel informed Discovery of the substitution of Gibbons as nominal plaintiff in this action and "again offered to defer to Discovery in prosecution of this action." (Compl. ¶ 10.) On October 14, 2010, Discovery advised Plaintiff through counsel of its belief that Section 16 of the Exchange Act did not apply to the transactions at issue. As a shareholder, Gibbons then exercised his statutory right to bring this action "to recover short-swing profits in the name of and on behalf of Discovery pursuant to Section 16(b) of the Exchange Act.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true . . . ." Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991) (citation omitted). The Court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (explaining that in deciding a motion to dismiss, a court

---

Securities Litigation, 241 F. Supp. 2d 281, 356 n.1 (S.D.N.Y. 2003).

"consider[s] the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor") (citation omitted). To survive a motion to dismiss, a complaint must state facts that, taken as true, "confer a judicially cognizable right of action." York v. Ass'n of Bar of City of New York, 286 F.3d 122, 125 (2d Cir. 2002).

In deciding this motion to dismiss, the Court may consider documents attached to the complaint as exhibits, incorporated in the complaint by reference, or so heavily relied on that the document can be deemed "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). Further, district courts considering a motion to dismiss in a securities fraud context may "review and consider public disclosure documents required by law to be and which actually have been filed with the SEC." Cortec Industries, Inc. v. Sum Holdings L.P., 949 F.2d 42, 47 (2d Cir. 1991).

## DISCUSSION

Plaintiff here pleads an apparently novel theory of liability under Section 16(b). He alleges that Malone's sales of shares of Series C stock and purchases of shares of Series A stock in December 2008 constitute a "short swing transaction" under the Section. Plaintiff asserts that "for sound statutory and policy reasons, transactions in voting and non-voting common

stock should be matchable with one another for the purposes of Section 16(b)." (Pl. Br. at 1.)

Defendants move to dismiss the complaint, arguing that Plaintiff's theory is an "unprecedented legal position" contrary to the statutory language of 16(b), the Exchange Act's policy preference for clear rules, and the governing case law on the issue.

### 1. Language of Section 16(b)

Section 16(b) of the Securities and Exchange Act of 1934 seeks to deter "short swing speculation" by company insiders who, on the basis of "inside" information affecting the price of a stock, "either buy low and sell high, or sell high and buy low within a relatively short time frame, thereby making a quick profit at the expense of the uninformed public." Morales v. New Valley Corp., 936 F. Supp. 119, 122 (S.D.N.Y. 1996). The statute provides in relevant part:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer ...

15 U.S.C. 16p(b). The Act elsewhere defines an "equity security" as:

> Any stock or similar security; or any security future on any such security convertible ... into such security, or carrying any warrant or right to subscribe

6

to or purchase such a security ..."
15 U.S.C. §78c(a)(11).

Plaintiff first argues that that under the plain language of Section 16(b), matching voting and non-voting common stock is permissible to establish liability. Plaintiff contends that if Congress had intended to limit the scope of the statute to sales and purchases in the same class or series of security, Congress could have drafted the statute to encompass "any equity security of the same class." (Pl. Br. at 5.) Congress' failure to do so here is significant, Plaintiff argues, because elsewhere in the Exchange Act, this type of more specific language was used. For example, the statute defines a "beneficial owner" subject to Section 16(b) liability as one who owns "more than ten percent of *any class* of equity security." 15 U.S.C. §§ 78p(a) (emphasis added).

Further, under Plaintiff's reading of the statute, the drafters' inclusion of "any" before "equity security" demonstrates that the statute merely requires a purchase of any equity security and a sale of any equity security; nowhere does the text require that the transactions be in the same class of security.

The Court disagrees with Plaintiff's reading of Section 16(b) and finds that the plain text of the statute requires that the purchase and sale be of the same equity security. The text

limits liability to profits realized from "the purchase and sale, or sale and purchase, of any equity security of the issuer." The drafters specifically chose to group "purchase and sale" and "sale and purchase" into single compounded units. This indicates that, to incur Section 16(b) liability, an insider's "purchase and sale" or "sale and purchase" must both be directed at the same prepositional object—i.e. the same equity security.[3]

The Court is also unpersuaded by Plaintiff's argument that the inclusion of "any" before "equity security" indicates that the insider can incur liability by buying any security and selling any security. Instead, "any" more logically indicates that "any" of the various types of equity securities, listed in the statutory definition of equity security excerpted above, can provide a basis for liability under the statute. Further, the drafter's decision to keep "equity security" in the singular form, rather than the plural, undermines Plaintiff's argument, as his theory requires the purchase and sale of any equity *securities*, rather than of one equity security.

**2. The securities at issue are not derivatives or debentures, convertible into each other.**

The Second Circuit has previously considered a similar issue regarding Section 16(b) liability: whether a derivative security and its underlying stock can be considered as part of the same

---

[3] See also Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 496 (3d Cir.

class for the purpose of determining whether someone owns ten percent of "any class of any security" and thus qualifies as a "beneficial owner" who can be held liable under the section. The Second Circuit held that debentures and other derivative securities are not a separate class of equity security, but rather are considered to be in the same class as the common stock into which such a security can be converted. Chemical Fund, Inc. v. Xerox Corp., 377 F.2d 107, 110 (2d Cir. 1967); see also 17 C.F.R. § 240.16a-4("both derivative securities and the underlying securities to which they relate shall be deemed to be the same class of equity securities" for the purposes of Section 16(a)).

Courts have consistently classified a derivative or debenture and its underlying common stock as belonging to the same class because that derivative or debenture security is "functionally equivalent to holding the underlying equity security ... since the value of the derivative securities is a function of or related to the value of the underlying equity security." Levy v. Oz Master Fund, 2001 WL 767013 at *3 (S.D.N.Y. July 9, 2001)(quoting Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 28,869 (Feb. 21, 1991)). However, the SEC has stated that securities without a fixed exercise price are excluded from the definition of derivative security for Section 16(b) purposes

---

2008)(stating that the elements of Section 16(b) require "(1)a purchase of a security and (2) a sale of *that* security...")(emphasis added).

because "[r]ights without a fixed exercise price do not provide an insider the same kind of opportunity for short-swing profit since the purchase price is not known in advance. The opportunity to lock in a profit begins when the exercise price is fixed..." Ownership Reports and Trading by Officers, Directors, and Principal Security Holders, SEC Release No. 34-28869, 1991 WL 292000 at *17. Here, Plaintiff has not alleged that either stock at issue is a derivative or debenture that has a value fixed to the other series of stock at issue. While Plaintiff argues that the prices of Series A and Series C stocks are highly correlated, similarity in price is insufficient to establish that the prices are "fixed" for the purposes of Section 16(b).

Notably, while the Second Circuit has not squarely addressed the issue presented here, in Smolowe v. Delendo Corp., 136 F.2d 231 (2d Cir. 1943), the court mentioned in a footnote that while Section 16(b) "might be read literally to permit a recovery where stock of one class is purchased and stock of another class sold," the likelihood that Congress actually intended such an interpretation is "beyond the realm of judicial fantasy." Id. at 237 n. 13.

Plaintiff has not cited to any authority supporting his interpretation of the section. He relies heavily on Gund v. First Florida Banks, Inc., 726 F.2d 682 (11th Cir. 1984). In Gund, the Eleventh Circuit found that the purchase and sale within six

months of a bank's common stock and a series of convertible subordinated debentures were matchable under Section 16(b). Id. at 687. Significantly, while the Eleventh Circuit did allow "cross-class matching," the debentures at issue in Gund were "freely convertible" into shares of the bank's common stock. Id. at 684. Here, as discussed above, neither the Series A nor Series C securities are convertible or derivatives and therefore Gund is unpersuasive.

### 3. Whether Series A and Series C stock are the same "class" of equity security

Plaintiff seems to argue in the alternative that even if Section 16(b) were to require that stocks be of the same class to be matchable, the stocks at issue here were two different *series* of common stock. (See Pl. Br. at 7.) Therefore, the stock should be considered part of the same *class* of equity security and as such be matchable for the purposes of Section 16(b).

Here, however, the Series A and Series C stock are sufficiently different that they should not be considered part of the same class of equity security. Courts analyzing whether two series of stocks are part of the same class of equity security are not bound by corporate labels in making such a determination. Ellerin v. Mass Mut. Life Ins. Co., F.2d 259, 263 (2d Cir. 1959). Rather, courts examine the distinguishing features of each security, including voting rights and powers, liquidation and

11

dividend preferences, and conversion features. <u>Morales v. New Valley Corp.</u>, 936 F. Supp. 119, 125 (S.D.N.Y. 1996).[4]

Here, Series A and Series C stock have different voting rights: Series A stock is entitled to one vote per share, while Series C stock is non-voting. (Compl. Ex. A at A-15.) Neither stock is convertible into the other, nor into any other security into which both can be converted. (<u>Id.</u> at A-15.) Cash dividends must be equal on a per-share basis for Series A and Series C stock, but only Series A can receive stock dividends. Upon liquidation, the two series must be treated equally. (<u>Id.</u> at A13-A17.) As of December 2008, an options market existed only for Series A stock, not for Series C stock. The two securities are traded under different stock tickers and were registered on different days. While Plaintiff alleges that the prices of Series A and Series C stock are "highly correlated," their prices are not fixed and they do not gain or lose value in unison. (Pl. Br. at 10-11.)

As Series A and Series C have different voting rights, different stock dividend preferences, are not convertible, and differ as to whether an options market exists for each series, the securities are properly classified as belonging to two

---

[4] Although its interpretations are not binding on this Court, significantly the SEC, considering a factually similar situation to the one presented here, previously treated two series of common stock with different voting powers and dividend entitlement as two distinct classes of securities for Section 16(a) purposes, though it did not address the question for Section 16(b) purposes. <u>Turner Broadcasting System, Inc., SEC No-Action Letter</u>, 1990 WL 285936 (Feb. 6, 1990).

different *classes* of equity securities, regardless of how they are denoted in Discovery's Articles of Incorporation.

Finally, the Court is unpersuaded by Plaintiff's policy arguments regarding the likelihood that "[p]ermitting short-swing trading between voting and non-voting common stock would make evasion of Section 16 trivially easy." (Pl. Br. at 11.) Even if this were true, the Supreme Court has "recognized the arbitrary nature of section 16(b), which is widely recognized as a 'crude rule of thumb'" to curb insider trading." Schaeffer v. Dickstein & Co., L.P., 1996 WL 148335 at *5 (S.D.N.Y. Apr. 2, 1996)(citing Reliance Electric Co v. Emerson Electric Co., 404 U.S. 418, 422(1972) & Blau v. Lamb, 363 F.2d 507, 515 (2d Cir. 1966)). The Supreme Court has also noted that "serving the congressional purpose [of Section 16(b)] does not require resolving every ambiguity in favor of liability ..." Foremost-McKesson, Inc. v. Provident Securities Co., 423 U.S. 232, 252 (1976). Further, Plaintiff's desired result would lead to a blurring of the bright-line rule established by Section 16(b), which was specifically "designed for easy application" by Congress. Cummings v. C.I.R., 506 F.2d 449, 453 (2d Cir. 1974).

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are GRANTED. The Clerk of the Court is directed to terminate ECF docket numbers 13 and 14 and close the case.

**SO ORDERED:**

_____
BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
          August 8, 2011